**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 15-CR-20403-CR-DIMITROULEAS**

**UNITED STATES OF AMERICA**

vs.

**ALVERIO FEO ALVARADO,**

    **Defendant.**
_____/

**UNITED STATES' MOTION FOR SENTENCE REDUCTION**

    COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and hereby moves for an amended sentence to 115 months of imprisonment in the sentence of the defendant, ALVERIO FEO ALVARADO, pursuant to Federal Rule of Criminal Procedure 35, in order to reflect his substantial assistance in the prosecution of others. In support of this motion, the Government states as follows:

**I.    BACKGROUND**

    1.    On June 4, 2014, a federal grand jury in the Southern District of Florida returned a one-count Indictment charging the defendant, Alverio Feo Alvarado, and others with conspiracy to distribute five kilograms or more of cocaine, knowing it would be unlawfully imported into the United States.

    2.    On September 18, 2017, the defendant Feo Alvardo pled guilty to Count 1 of the Indictment [DE 138].

    3.    On November 28, 2017, this Court sentenced the defendant to 210 months' imprisonment [DE 149].

4. Since his arrest, the defendant has assisted the United States in the investigation and prosecution of others. His cooperation is now complete.

5. In summary, Alvarado managed the political arm of the largest drug trafficking organization in Colombia. He also served as a liaison between, on the one hand, sources of supply for cocaine and cocaine investors in Colombia and, on the other, the leaders of the Urabeños drug trafficking organization. *See Presentence Investigation Report* ¶ 10. In that role, Alvarado helped to arrange for the shipment of narcotics from Colombia to Central America and Mexico for eventual importation into the United States.

## II.     ALVARADO'S COOPERATION

6. Alvarado agreed to testify against Henry de Jesus Lopez Lonono, also known as "Mi Sangre." *See generally United States v. Lopez Londono*, 10-CR-20763-Graham (S.D.F.L.). This trial occurred over February and March of 2018, and Alvarado was among the witnesses who testified, leading to the conviction of Lopez Londono.

7. It should be noted that Lopez Londono was a very significant and violent narcotics trafficker. At trial, multiple co-conspirators testified regarding their dealings with Lopez Londono in the trafficking of cocaine to the United States that occurred during the charged conspiracy—October 2006 through February 2012. Leading up to the conspiracy, in the early 2000s in Colombia, Lopez Londono joined the United Self-Defense Forces of Colombia (known in Spanish by the acronym "AUC"), an organization designated in 2001 by the United States a foreign terrorist organization. The AUC used drug proceeds to fund criminal and terrorist activities in Colombia. Lopez Londono ascended through the ranks of the AUC to control areas in and around Bogota, Colombia, known as the Bloque Capital, where he trafficked in narcotics and collected drug debts for the organization.

8.      After the AUC demobilized in or around 2005 pursuant to a peace treaty with the Government of Colombia, former members of the AUC formed into criminal organizations throughout Colombia to control highly-profitable drug trafficking routes.    Lopez Londono joined the Urabeños criminal organization (sometimes referred to as "Clan Usuga" or "Clan de Golfo") situated along the northern coast of Colombia.    He became a high-ranking leader of the Urabeños, managing drug trafficking activities of the organization.

9.      During the conspiracy, from the areas controlled by Lopez Londono and the Urabeños, drug traffickers sent boats loaded with thousands of kilograms of cocaine to Central America for eventual importation into the United States.    The evidence at trial showed that Lopez Londono: (1) taxed drug traffickers approximately $400 to $500 per kilogram of cocaine leaving Colombia from areas he and his organization controlled; (2) he invested kilograms of cocaine in loads dispatched by drug traffickers; and (3) he collected drug debts, which at times involved violence or threats of violence.

10.     Witnesses testified that, working with Lopez Londono, they sent approximately 60,000 kilograms of cocaine from Colombia to Central America for eventual importation into the United States.    Regarding drug debts, when law enforcement seized a drug load or a load was somehow lost, a debt resulted between the person responsible for losing the load and the trafficker who invested money in the venture.    The trafficker who lost his investment contracted Lopez Londono and his organization to collect the debt.    Lopez Londono received a percentage of the debt collected.    To collect the debt, one of the tactics used was that Lopez Londono and his workers kidnapped the debtor until he paid the debt and if no payment occurred, Lopez Londono and his organization sometimes resorted to murdering the individual.    Payments received from debt collections permitted Lopez Londono's criminal enterprise to flourish, for example, by using

the funds to pay workers that aided him in controlling his drug trafficking areas of operation, and to further additional drug trafficking ventures. This led Lopez Londono to eventually lead a group that consisted of 900 men under his control.

11. Beyond the position of Lopez Londono as significant and violent drug trafficker, it should be noted that the trial presented challenges for the government because Lopez Londono claimed a "public authority" defense, arguing that his drug trafficking work was done at the behest of DEA. Indeed, it was true that Lopez Londono had at one time or another communicated with various members of U.S. law enforcement while he considered cooperating or surrendering. However, the trial team proved that at no time was Lopez Londono ever considered a cooperator by law enforcement and he was never granted permission to traffic drugs, much less to commit acts of violence. Due to the fact that Lopez Londono was a prominent and violent trafficker, coupled with his purported defense, the trial against him was one of importance for the Government.

12. Despite the significance of Lopez Londono as the head of a large, drug trafficking organization and his known propensity for violence, Alvarado agreed to testify against him at trial. Alvarado's testimony assisted the Government in convicting Lopez Londono and, in considering the appropriate sentence for Alvarado, the Government respectfully submits that the Court should consider this trial testimony and credit Alvarado for the assistance he provided in the *Lopez Londono* prosecution.

13. While Alvarado has met with the Government, no other information has risen to the level of substantial assistance. His cooperation is now complete. The Government files this motion now because no other defendants remain in custody in the United States or Colombia

4

pending imposition of judgment by the Court. The Court recently sentenced co-defendant Eduardo Luis Vargas-Gutierrez on March 6, 2020 [DE 195].

WHEREFORE based on the defendant's substantial assistance, the United States respectfully recommends that this Court reduce his sentence to an amended sentence of 115 months of incarceration, which correlates to a forty-five percent reduction in his sentence.

Orlando do Campo, attorney for the defendant, agrees with filing of the motion, but he opposes the Government's request for an amended sentence of 115 months' imprisonment. Mr. do Campo does not seek a hearing on the matter, however, he will file a response that provides the Court with his client's position on the amount for an amended sentence.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: _/s/ Robert J. Emery_
Assistant United States Attorney
Court Number A5501892
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9421
Fax: (305) 536-4651
Robert.emery2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

_s/ Robert J. Emery_
Robert J. Emery
Assistant United States Attorney

5